```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION
```

_____

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                                   File No. 1:10-CR-05

DAVID W. MILLER,

        Defendant.
_____/

## Sentencing

Before

        THE HONORABLE ROBERT HOLMES BELL
          United States District Judge
              June 17, 2010

## APPEARANCES

| | |
|---|---|
| BRIAN K. DELANEY | DONNA J. INNES |
| Assistant U.S. Attorney | 707 Academy St. |
| P.O. Box 208 | Kalamazoo, MI 49007 |
| Grand Rapids, MI 49501 | Attorney for Defendant |
| Attorney for Plaintiff | |

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                       Grand Rapids, Michigan
 2                                       June 17, 2010
 3                                       10:02 a.m.
 4                                -  -  -
 5
 6                         P R O C E E D I N G S
 7
 8           THE COURT:  Good morning.  This is the matter of
 9   United States v. David W. Miller.  Our file is 1:10-CR-05, Mr.
10   Delaney representing the United States Attorney's Office, Ms.
11   Innes representing Mr. Miller by court appointment.
12           We were last here on March 8th when a plea of guilty
13   was entered to the indictment charging that of embezzlement
14   and theft of labor union funds contrary to 29 United States
15   Code 501(c).  A presentence report has been prepared in the
16   interim by Mr. Hyink and I believe it has been circulated to
17   counsel.  It is some 18 pages in length.
18           Mr. Delaney, have you had a chance to review the
19   same --
20           MR. DELANEY:  I have, Your Honor.
21           THE COURT:  -- and if so, are there any corrections
22   or deletions necessary in this?
23           MR. DELANEY:  No, Your Honor.
24           THE COURT:  Okay.  Ms. Innes?
25           MS. INNES:  Yes, I've also reviewed it.  We have no
```

```
 1    additions, corrections or deletions, Your Honor.
 2              THE COURT:  Okay.  The Court has reviewed the plea
 3    agreement in light of the presentence report and finds that
 4    the charge pled to adequately reflects the seriousness of the
 5    actual offense behavior in this matter.
 6              Mr. Miller, have you had a chance to carefully
 7    review this presentence report?
 8              DEFENDANT MILLER:  Yes, sir, I have.
 9              THE COURT:  Does that presentence report accurately
10    represent you and your circumstances?
11              DEFENDANT MILLER:  Yes, sir.
12              THE COURT:  Are you satisfied with Ms. Innes's
13    representation of you throughout this matter?
14              DEFENDANT MILLER:  Yes, sir.
15              THE COURT:  Very well.  Anything that we should take
16    up before allocution on behalf of the government, Mr. Delaney?
17              MR. DELANEY:  No, Your Honor.
18              THE COURT:  Ms. Innes?
19              MS. INNES:  No, Your Honor.
20              THE COURT:  Okay.  You and your client can come to
21    the podium and the Court will hear remarks first from you and
22    then from your client.  I should also note that you filed a
23    very nice and very thorough sentencing memorandum with this
24    Court that this Court has reviewed in conjunction with its
25    sentencing responsibilities.  You may proceed.
```

1                MS. INNES:  Thank you, Your Honor.
2                Well, obviously money management is not Mr. Miller's
3     forte.  He is a hard worker, though, a caring and attentive
4     father of two young children.  He got himself in a situation
5     where he was given a lot of credit that he simply couldn't
6     afford.  He made bad decisions, and ultimately he has pled to
7     this charge and accepted his responsibility for the theft,
8     that he was the individual who did that.
9                He lost a good-paying job.  He's got a felony
10    conviction that's going to obviously dramatically impact his
11    ability to be a good wage earner in the future, and one of the
12    primary purposes, I would suppose, of this sentence is to try
13    to make whole the individuals who the money has been taken
14    from, so there will be payments that will have to be made.
15               He has made inquiries.  He's considered a displaced
16    worker because he had been laid off from automotive-related
17    industry situations, so Michigan Works would fund potentially
18    his schooling to a heavy equipment situation.  That was an
19    $8,500 tuition.  There is a possibility for the future that he
20    would qualify potentially for that in order to secure a better
21    job in order to make more money to pay back what is owed.
22               THE COURT:  So this whole matter is just a matter of
23    getting himself in a financial bind and using bad financial
24    judgment; is that right?
25               MS. INNES:  No, I think it goes beyond that,

1   definitely.  I mean, that kind of was the start, but certainly
2   many people find themselves in similar situations and don't
3   react the way Mr. Miller did, and I'm certainly not trying to
4   diminish what has happened.  It was a criminal act, he's
5   responsible, and it went on for a period of time and it
6   shouldn't have.
7            But we're trying to look to the future and how are
8   we going to get these people paid back.  The guidelines came
9   out a little higher than we anticipated or hoped for.  Seems
10  there is some period of incarceration that would be necessary
11  and there will have to be some structured payment plan put in
12  place, and that's sort of going to be what he will concentrate
13  on upon his release.
14           So that's where we're at.  He has worked steadily.
15  He's now laid off.  He's been laid off twice through Manpower
16  and is currently not able or is not working and is awaiting
17  his next assignment.  So we will leave the sentencing to the
18  Court, and thank you.
19           THE COURT:  Thank you.
20           Remarks you would wish to make at this time, Mr.
21  Miller?
22           DEFENDANT MILLER:  Again I would like to apologize
23  to the union and all the people in the union for what I did.
24  I'm seeking employment.  It's a weekly -- I go every Monday
25  morning to the local Michigan Works office and the two

1   placement services that are in the area to let them know that
2   I'm still seeking and looking for work.  I've applied for and
3   been accepted to the heavy equipment program that she referred
4   to.  I'm just simply waiting for an okay for the No Worker
5   Left Behind Program for funding, and I look forward to
6   figuring out how I'm going to pay this money back and --
7              THE COURT:  Simple as that.  That's all it really
8   comes down to, isn't it?
9              DEFENDANT MILLER:  Paying them back?  Yes.  I have
10  no idea how I'm going to do it, but --
11             THE COURT:  Okay.  Thank you.
12             Mr. Delaney, do you have any comments you'd wish to
13  make?
14             MR. DELANEY:  Just briefly, Your Honor.  I know the
15  Court's well aware and well-versed.  Mr. Hyink did a good job
16  in preparing a presentence report in this case, including
17  making contact with the victim of this case.  Mr. Butters is
18  present in the courtroom.  He does not wish to speak to the
19  Court at this time.  However, he does have a victim impact
20  statement that's contained within the presentence report, Your
21  Honor.
22             There are real victims in this case, including those
23  that continue to work in the union who are paying now, instead
24  of $12.50 a month, they're paying two hours of every paycheck.
25  There's obviously a lot of anger, and as the report indicates,

1    the union had to find another affiliate.
2            In addition, this is not an aberrant crime.  This
3    isn't something that just happened once, but it was
4    calculated.  I mean, if you look at the record, Your Honor,
5    the first check was written on March 27, 2008, 84 more checks
6    over a period of 17 months with the last check written on 8/10
7    of 2009, so 17 months of continuing to do this, to conceal
8    what he was doing.  And I also would mention that the vast
9    majority of the checks were written to himself personally, so
10   they turned into cash essentially.  Hard to trace that kind of
11   money, including one check for $8,700, another for $4,000,
12   Your Honor.  All this weighs upon a decision by this Court,
13   obviously, that's well aware of what's going on here.
14           And I think that as more than just making payment,
15   the defendant needs to serve some kind of a custodial sentence
16   in this case, Your Honor, that's a deterrent to others who
17   would do this kind of activity and a message to those who are
18   working in the union that crime does not pay.  Thank you, Your
19   Honor.
20           THE COURT:  Thank you.
21           At this workplace where you worked, Mr. Miller, did
22   you have individual lockers where you put your things when you
23   changed to go work?
24           DEFENDANT MILLER:  At Metaldyne?
25           THE COURT:  Yes.

```
 1                 DEFENDANT MILLER:  Yes, we did.
 2                 THE COURT:  And presumably you went into the lockers
 3    when you arrived and put your things in there, and then when
 4    you left, you went back to the lockers, picked up your things
 5    and left.  Is that right?
 6                 DEFENDANT MILLER:  Yeah.  Yes.
 7                 THE COURT:  What would you think of somebody that
 8    was working at the factory and while you were out on the floor
 9    working, they went through all the lockers and took the
10    billfolds and took the credit cards and took the money out of
11    the billfolds?
12                 DEFENDANT MILLER:  I wouldn't think very highly of
13    them.
14                 THE COURT:  What would you call them?
15                 DEFENDANT MILLER:  A thief.
16                 THE COURT:  What would you do if you caught them?
17                 DEFENDANT MILLER:  Probably would have handled it
18    the way I thought it should be handled.
19                 THE COURT:  How should it have been handled?
20                 DEFENDANT MILLER:  A good old-fashioned ass-kicking.
21                 THE COURT:  Okay.  Didn't you do that?
22                 DEFENDANT MILLER:  Yes, I did.
23                 THE COURT:  In fact, you did more than that.  You
24    were entrusted with a trust on behalf -- you were voted in
25    presumably by everybody that was in the union, right?
```

1              DEFENDANT MILLER:  Um-hum.  Yes, sir.
2              THE COURT:  They said David Miller is a trustworthy
3     individual; therefore, we will entrust our money with David
4     Miller, didn't they?
5              DEFENDANT MILLER:  Yes, sir, they did.
6              THE COURT:  You breached that trust, didn't you?
7              DEFENDANT MILLER:  Yes, I did.
8              THE COURT:  That's really why you're here, isn't
9     it?
10             DEFENDANT MILLER:  Yes.
11             THE COURT:  If it was just simple theft, you'd go up
12    to wherever it is, I think it's Hillsdale County or wherever,
13    you'd be in district court there and they'd slap you with a
14    fine and you'd be on your way.  But that's not why you're
15    here.  You're here because you violated a trust that was
16    imposed by law upon you, a very serious trust when it came to
17    the other workers' monies.  Whether it involves $50,000 or $5
18    million, and I've had the full gamut of people like you who
19    have done this, it doesn't make much difference how much it
20    is, it's that violation of trust, isn't it?
21             DEFENDANT MILLER:  Yes, sir.
22             THE COURT:  And this wasn't once, but it was 83
23    times, wasn't it?
24             DEFENDANT MILLER:  Yes, sir.
25             THE COURT:  And each time you wrote that check to

```
 1   yourself, you knew that the money that you were using to write
 2   to yourself was money that belonged to the people that you
 3   worked with?
 4              DEFENDANT MILLER:  Yes, sir, I did.
 5              THE COURT:  You were working with them at the time,
 6   weren't you?
 7              DEFENDANT MILLER:  Yes.
 8              THE COURT:  That's why you're here.  You know, we
 9   get ourselves in financial binds sometimes.  We get health of
10   children or houses burn down or sometimes we get into
11   financial jams of our own making, but sometimes they're not of
12   our own making.  Sometimes they come along just because of the
13   way things are.  You know, as the old biblical phrase goes,
14   the rain falls on the just and the unjust, so those kind of
15   things occur.
16              But as I review this matter with you, obviously
17   there was some domestic disputes going on with your ex-wife
18   and whatever, but largely the bills that you were having to
19   encounter were credit card bills, weren't they?
20              DEFENDANT MILLER:  Yes, sir.
21              THE COURT:  And you encountered those debts, didn't
22   you?
23              DEFENDANT MILLER:  Yes.
24              THE COURT:  And when you wrote those credit cards
25   for this and that, you had probably a pretty good idea that
```

1  that was exceeding your ability to pay at some point, didn't
2  you?
3              DEFENDANT MILLER:  Yes.
4              THE COURT:  But you did it anyway.
5              DEFENDANT MILLER:  Yes.
6              THE COURT:  I find this matter carries an adjusted
7  offense level of 12 and a criminal history level of I.  I find
8  a serious violation of breach of trust.  Obviously, Congress
9  has recognized that it's a serious breach of trust by virtue
10 of the nature of a credit union, by virtue of the democracy in
11 a credit union which lets the credit union select one of their
12 own to be their treasurer, and the theft of a credit union by
13 way of embezzlement is considered a very serious offense.
14 Very serious offense.
15             Part of this Court's review under the sentencing
16 statute, Section 3553(a), is to look at whether an adequate
17 deterrence to criminal conduct can be had from the sentence.
18 And obviously the Congress intends that if there is a
19 criminalization of the behavior, which there has been here,
20 and for good reason, that this must stand as a signal to
21 anyone else who has that inclination to say you don't steal
22 other people's money, particularly if it's in a trust
23 situation.  You had legal obligations to that trust of the
24 union which you thoroughly and clearly violated, as counsel
25 indicated, over a long period of time here.

1            So those are the nature and circumstances.  But your
2    history and characteristics are that you have been a working
3    person.  You've largely taken care of your family and yourself
4    throughout your life, and that speaks well for you that you've
5    not had other issues.  This sentence must promote respect for
6    law while being a just punishment within the rubric of a
7    credit union -- or of a labor union theft context.
8            This Court believes that a sentence sufficient to do
9    that is a sentence of 13 months in the custody of the Federal
10   Bureau of Prisons followed by two years of supervised release
11   with the standard conditions of reporting and remaining
12   law-abiding.
13           You will hereafter be a federally convicted felon.
14   You may not own guns of any kind.  Therefore, during this
15   period of supervised release I want no alcohol, I want no
16   drugs, no guns, I want no presence in bars or taverns, and I
17   want no new credit undertaken unless you have permission from
18   the supervised release officer.  You must secure employment
19   and/or be in school pursuing an educational endeavor, and I
20   want mental health counseling at the option of the probation
21   officer in this matter.
22           A fine will be waived by virtue of the fact that the
23   restitution amount due and owing to the union here, the
24   Independent Workers Local 373, I think it's called LIWU 373,
25   which I note now is apparently an affiliate of the UAW, is

1  $50,501.99.  Interest will be waived on that restitution
2  amount, but I want at a minimum $200 a month to be paid during
3  the course of your supervised release, and the remaining
4  balance at the end of the supervised release will be
5  determined by the supervised release officer and will be part
6  of a judgment lien against any tax refunds or anything else
7  that occur with you, Mr. Miller.
8          This remains your primary obligation to extinguish.
9  Until that's extinguished, you will have on your neck the
10 monies of other people that you spent satisfying yourself, and
11 it seems to me that the best way to get that behind you is to
12 make arrangements to somehow get that paid.
13         Any legal objection to the sentence imposed by this
14 Court that has not previously been raised, Mr. Delaney?
15         MR. DELANEY:  No, Your Honor.
16         THE COURT:  Ms. Innes?
17         MS. INNES:  No, Your Honor.
18         THE COURT:  You have a limited right of appeal,
19 having largely waived the right to collaterally attack a
20 sentence under Paragraph 8 of the plea agreement.  You have 14
21 days in which to file an appeal.  Those forms will be
22 delivered to you for an appeal.  You'll be remanded to the
23 marshal for execution of this sentence forthwith.
24         The Court wishes to thank you, Ms. Innes, for the
25 able representation you have provided on behalf of Mr. Miller

```
 1   in this matter.
 2              MS. INNES:  Thank you, Your Honor.
 3              THE COURT:  Anything else, Mr. Delaney?
 4              MR. DELANEY:  No, Your Honor, thank you.
 5              THE COURT:  Anything else, Ms. Innes?
 6              MS. INNES:  I'm sorry.  Did the Court say he was
 7   being remanded now?
 8              THE COURT:  Yes.  Mandatory special assessment of
 9   $100 as well in this matter.  Thank you.
10                (Proceedings concluded at 10:18 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF REPORTER

       I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

       I do further certify that the foregoing transcript was prepared by me.

/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503